VANASKIE, Circuit Judge,
concurring in part and dissenting in part.
I agree with the majority’s conclusion that the extension provision of Article I, Section 4 of-the agreements is unenforceable. I part company with the majority, however, with respect to the holding that the collective bargaining agreements are not of indeterminate duration because they will terminate upon completion of the Fair-less Hills project, a project that has spanned more than three decades since the agreements were negotiated. Indeed, there is no end in sight for the project, and I believe that is the quintessential example of an indeterminate duration. Therefore, I respectfully dissent from the majority’s conclusion that the collective bargaining *117 agreements at issue are not terminable at will by either party upon reasonable notice.
As the majority notes, “[f]ederal law governs the construction of collective bargaining agreements, [and] traditional rules of contract interpretation apply when not inconsistent with federal labor law.” Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir.1993). In interpreting labor contracts, the Supreme Court has instructed federal courts to “fashion from the policy of our national labor laws” a body of substantive federal law. Textile Workers Union of America v. Lincoln Mills of Ala., 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).
Employing this authority, federal courts have articulated the principle that “[l]abor contracts of indeterminate duration are generally terminable at will upon reasonable notice to the other party.” Communications Workers of America v. Southwestern Bell Telephone Co., 713 F.2d 1118, 1123 n. 4 (5th Cir.1983); Boeing Airplane Co. v. NLRB, 174 F.2d 988, 991 (D.C.Cir.1949); Montgomery Mailers’ Union No. 127 v. Advertiser Co., 827 F.2d 709, 715 (11th Cir.1987). This is because our labor laws encourage collective bargaining between labor organizations and employers as a means of both ensuring “the friendly adjustment of industrial disputes arising out of differences as to wages, hours, or other working conditions,” as well as safeguarding the “equality of bargaining power between employers and employees.” 29 U.S.C. § 151. In the absence of a periodic opportunity to adjust wages, hours, or working conditions, an indefinite labor agreement becomes a tool that exacerbates the inequality of bargaining power between employers and laborers, rather than providing a bulwark against it.
The majority acknowledges that the agreements as written cannot stand, as they purport to give Allied the unilateral ability to extend the agreements indefinitely to any new jobsites they desire. Rather than taking the remedial step of declaring the agreements terminable at will by either party, the majority seeks to reform the indefinite contracts to limit them to a definite duration. To do this, the majority strikes Article I, Section 4. but leaves in place the ■ provision indicating the agreements will terminate upon the completion of “[Allied’s] jobsite at the USX Corporation Fairless Hills Pennsylvania facility.” (App.78)
The majority believes this fix renders the agreements definite and enforceable, noting that the “Union concedes that one jobsite cannot contain an infinite amount of work.” Maj. Op. at 114, fn. 8 (emphasis added). But indeterminate does not mean infinite. Indeterminate is defined as “uncertain; not ascertained; not fixed; not made certain.” Ballentine’s Law Dictionary 610 (3rd ed.1969). For instance, an agreement that provided that it would terminate upon a certain person’s death would be indeterminate because, although a human lifespan is not infinite, its duration is not capable of being ascertained in advance by the parties to the contract.
Although I agree that this case does differ from Montgomery Mailers Union, upon which the District Court relied, in that neither party to the contracts possesses the unilateral ability to extend the collective bargaining agreements in perpetuity, this case similarly presents contracts whose duration cannot be fixed or ascertained by the parties in advance of termination. The majority comforts itself that “the work at Fairless Hills could conclude in five years” (Maj. Op. at 114, fn. 8), but when pressed at oral argument, Allied’s counsel conceded that he had “no idea how *118 long it could take” for the Fairless Hills project to be completed. (Oral Arg. At 31:46-31:50). Uncertainty about the amount of time the contracts will govern the relationship between the parties prevents the members of the union from knowing how long they will have to continue to labor under the existing contractual terms — negotiated more than twenty years ago — before being permitted to renegotiate. The duration of the agreements is, therefore, “uncertain; not ascertained; not fixed; not made certain.” Ballentine’s Law Dictionary at 610.
The majority’s conclusion that the agreements are not indeterminate because the projects will be completed at some unknown time in the distant future thwarts federal labor law’s preference for the negotiated adjustment of “industrial disputes arising out of differences as to wages, hours, or other working conditions.” 29 U.S.C. § 151. In this instance, it is the laborers whose terms and conditions of employment are frozen indefinitely. In another instance, it may be the employer who becomes hostage to a collective bargaining agreement of indefinite duration, negotiated perhaps at a time when organized labor had the upper hand in bargaining. The point is that neither labor nor the employer should be unable to negotiate the terms and conditions of employment on a periodic basis. The majority’s holding effectively forecloses the union from doing so on behalf of its members for however long it may take to complete the Fairless Hills project.
The majority notes that “federal labor policy promoting labor relations stability does not permit parties to unilaterally repudiate collective bargaining agreements during the agreed-to term.” Maj. Op. at 116 (citing Int’l Assoc, of Bridge, Structural & Ornamental Iron Workers, Local 3 v. NLRB, 843 F.2d 770, 778 (3d Cir.1988) [Deklewa ]). But Deklewa concerned a very different factual scenario — an employer’s attempt to renege on a collective bargaining agreement with a fixed three-year term. Id. at 772. I would not extend Deklewa to the type of agreements at issue here, which have no ascertainable duration. In such cases, federal labor law’s interest in stability is outweighed by its concern with equalizing bargaining power between labor organizations and employers and preventing the ossification of disputed wages, hours, and working conditions. See 29 U.S.C. § 151.
Because I believe considerations of federal labor policy weigh in favor of allowing the parties to terminate the agreements at issue upon giving reasonable notice, I respectfully dissent.